UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICKY A. FULLER and
THERESA A. FULLER,

                      Plaintiffs,

v.

SUMMIT TREESTANDS, LLC,

                      Defendant.

_____

**REPORT, RECOMMENDATION AND ORDER**

07-CV-00330(A)(M)

        This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings in accordance with 28 U.S.C. §636(b)(1) [4].[1] Before me are plaintiffs' motion to compel the production of documents [59], defendant's motion for summary judgment regarding plaintiff's failure to warn, manufacturing defect and warranty claims [70], defendant's motion for summary judgment regarding proximate cause [71], defendant's motion *in limine* to preclude plaintiffs' liability expert, Aldren Gaudreau, from testifying at trial [72], and defendant's motion to strike the Gaudreau affidavit submitted in opposition to the summary judgment motions [75]. Oral argument was held on May 8, 2009.

**BACKGROUND**

        Plaintiffs seek to recover damages for personal injuries allegedly sustained by plaintiff Ricky Fuller while hunting on November 13, 2005, as the result of the collapse of an allegedly defective "Viper XL" treestand manufactured by defendant Summit Treestands, Inc.

---

[1]       Bracketed references are to CM-ECF docket entries.

("Summit"). A treestand consists of a platform to which the hunter straps his feet, a seat, and a safety harness.

Although plaintiff Ricky Fuller claims to have no recollection of the accident itself, or of any events from the time he began to climb the tree until he found himself in his truck following the accident (*see* deposition transcript [72, Ex. A], pp. 94-96), plaintiffs allege that "a cable became unattached due to a faulty retaining mechanism, causing the plaintiff and the treestand to fall to the ground". Complaint [72, Ex. N], ¶10. The complaint further alleges that the treestand was defective (id., ¶16), that Summit is strictly liable in tort (id., ¶19), and that Summit was negligent (id., ¶21).

## DISCUSSION AND ANALYSIS

I.  **Summit's Motion for Summary Judgment as to Plaintiffs' Failure to Warn, Manufacturing Defect and Warranty Claims [70]**

   A.  **Summary Judgment Standard**

   The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could

-2-

reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F. 3d 280, 285-86 (2d Cir. 2002)).

However, while the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted).

If the opposing party meets that burden, then the motion must be denied regardless of that party's likelihood of success at trial. "Summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial . . . . The responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself." American International Group, Inc. v. London American International Corp. Ltd., 664 F. 2d 348, 351 (2d Cir.1981); Sciurca v. Chrysler Motor Corp., 712 F. Supp. 303, 305 (E.D.N.Y.1989) ("a party is not entitled to summary judgment simply because the evidence he offers appears more plausible than his opponent's evidence").

B.  **Failure to Warn**

"Under New York Law, a plaintiff may assert that a product is defective because the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product." Sorto-Romero v. Delta International Machinery Corp. 2007 WL 2816191, *11 (E.D.N.Y. 2007). "However, a manufacturer does not have a duty to warn of a danger associated with a reasonably foreseeable misuse when that danger is readily discernible or the 'injured party is already aware of the *specific* hazard." Id. (emphasis added).

Summit argues that plaintiffs' failure to warn claim should be dismissed because plaintiff Ricky Fuller admitted that he was fully aware of the risk in failing to wear a safety harness, and that he understood the need to squeeze the cable's hatch cover together when necessary. Plaintiffs respond that "the specific hazard plaintiff was aware of . . . was that he could fall from the tree stand if not properly tethered in. What plaintiff never anticipated, and was never warned of, was that the tree stand could collapse from underneath him". Plaintiffs' Memorandum of Law [74], p. 17. "Mr. Fuller acknowledges the instructions to squeeze the hatch cover, however, there was no warning or instruction that the cover could open up during ascension or descention [*sic*]." Id., p. 18.

"The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." Urena v. Biro Mfg. Co., 114 F.3d 359, 366 (2d Cir. 1997); Sorto-Romero, supra, *11. Because there is no evidence that Mr. Fuller was aware of the specific hazard that the treestand platform

could collapse from under him due to detachment of the cable (rather than of his falling from the platform itself), plaintiffs' failure to warn claim is not susceptible to summary judgment.

Plaintiffs attempt to bolster their failure to warn claim through testimony of their expert, Aldren Gaudreau. While I do not believe that he is qualified to offer expert testimony in that regard (*see* Point III, *infra*), the lack of expert testimony is not fatal to this claim. "Under New York law, the jury does not need expert testimony to find a warning inadequate, but may use its own judgment concerning all the circumstances". Sorto-Romero, supra, *11; Humphrey v. Diamant Boart, Inc., 556 F.Supp. 2d 167, 179 (E.D.N.Y. 2008).

### C. Defective Manufacture

Summit seeks dismissal of any claim that the treestand was defectively manufactured. Mr. Gaudreau stated that he has no opinion on that issue (Gaudreau deposition [72, Ex. C], pp. 117-18), and plaintiffs do not oppose this portion of Summit's motion. Therefore, I recommend that Summit's motion be granted to the extent that it seeks to be dismiss any claim that the treestand was defectively manufactured.

### D. Breach of Warranty

Summit argues that the complaint does not allege breach of warranty. That argument "misconceives the nature of federal pleading which is by statement of claim, not by legal theories". Newman v. Silver 713 F.2d 14, 16 (2d Cir. 1983). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002).

In response to Summit's interrogatory as to whether plaintiffs claimed a breach of warranty, plaintiffs stated that Summit "breached expressed and implied warranties of fitness for intended uses and foreseeable uses" [74, Ex. 16, ¶ 23]. However, plaintiff Ricky Fuller admitted that he did not rely upon any express warranties regarding the treestand. Deposition of Ricky Fuller [72, Ex. A], p. 4. That admission is fatal to his express warranty claim, since "under New York law, an action for breach of express warranty requires both the existence of an express promise or representation and reliance on that promise or representation." Horowitz v. Stryker Corp. 2009 WL 436406, *11 (E.D.N.Y. 2009).

However, "the law also implies a warranty by the manufacturer or seller of a product that the product is reasonably fit for the ordinary purposes for which it was intended to be used. If the product is not fit to be used for its ordinary purposes, the implied warranty is breached." Arnold v. Krause, Inc., 233 F.R.D. 126, 132 (W.D.N.Y. 2005) (Arcara, J.) (denying summary judgment on this claim involving a collapsed ladder). In light of my conclusion that there is a genuine issue of fact as to whether the treestand was defective (*see* Points II, IV, *infra*), plaintiffs' implied warranty claim may not be dismissed at this point.

**II.  Summit's Motion for Summary Judgment as to Proximate Cause [71]**

In a separate summary judgment motion, Summit seeks dismissal of all of plaintiffs' product liability claims due to plaintiffs' inability to prove proximate cause. Citing Mr. Fuller's inability to recall the circumstances of the accident, Summit relies upon the opinions of its own experts, arguing that Mr. Fuller "*must have* intentionally removed the cable from the cable bracket to reposition the platform while he was at an elevated height when he fell".

Summit's Memorandum of Law [71], p. 9 (emphasis added). Summit justifies this conclusion by noting that the tree narrows at a height of 10-12 feet, where there is also "a large knot in the tree which would have required Plaintiff to maneuver around while climbing. This also would *likely* have necessitated the Plaintiff to adjust the cable length of the platform once he reached the height he fell from". Id. (emphasis added).

However, Mr. Fuller insists that "I absolutely did not open the hatch cover and detach the cable. In all the times I used the treestand I never opened the hatch cover and detached the cable while climbing. I climbed the tree in question before. I did not detach the cable on those occasions. I did not detach the cable on the day I fell." Affidavit of Ricky Fuller [74-19], ¶¶3-6. Although his inability to recall the events of the day in question might otherwise preclude his testimony that he did not open the hatch cover or detach the cable on that day, Fed. R. Evid. 406 allows "evidence of the habit of a person . . . whether corroborated or not . . . to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit".

Thus, Mr. Fuller's testimony that he had climbed the same tree previously without opening the hatch cover or detaching the cable on those occasions, and that he never opened the hatch cover or detached the cable on other occasions when using the treestand, could support a finding that he likewise did not open the hatch cover or detach the cable on the day of the accident. *See* United States v. Bifulco, 2007 WL 1288214, *1 (W.D.N.Y. 2007) (Arcara, J.) ("Trial counsel, in a sworn affidavit, states that it is his routine habit and practice to advise a client of his right to testify, and although he does not specifically recall advising petitioner of this right, he is confident he did so in this case as well. Under Rule 406 of the Federal Rules of

Evidence, evidence of habit or routine may be used to show that a person's actions in a particular occasion were in conformity with the general routine").

If that testimony is believed, the jury could reasonably infer that the treestand was defective, with or without expert testimony in support of that claim. "The plaintiff is not required to show why the product malfunctioned to establish is claim . . . . Such a claim may be established by circumstantial evidence that the product did not perform as intended and by excluding all causes of the accident not attributable to the defendant." Arnold, supra, 233 F.R.D. at 131. "Expert testimony as to the specific design defect is not required." Id. at 132.

Summit further notes that "for there to be a recovery for injuries or damages occasioned by a defective product, at the time of the occurrence, the product must have been used for the purpose and in the manner normally intended or in a manner reasonably foreseeable", Summit's Memorandum of Law [71], p. 5 (quoting Amatulli by Amatulli v. Delhi Const. Corp. 77 N.Y.2d 525, 532 (1991)), and argues that "principles of foreseeability . . . are inapposite where a third party affirmatively abuses a product by consciously bypassing built-in safety features". Id. (again quoting Amatulli).

However, it has repeatedly been recognized that a plaintiff's failure to use a safety harness is not necessarily "unforeseeable" as a matter of law. For example, in Milliman v. Mitsubishi Caterpillar Forklift America, Inc., 594 F. Supp. 2d 230, 245 (N.D.N.Y.2009), involving the plaintiff's failure to use a safety harness when he fell from an "order picker" machine in a warehouse, the court denied summary judgment, holding that "there is a genuine issue of fact in relation to the foreseeability of the conduct of Mr. Milliman . . . and the alleged misuse of the order picker was not unforeseeable as a matter of law". The same principle has also

been recognized in cases involving a hunter's failure to wear a safety harness while using a treestand. *See* Finke v. Hunter's View, Ltd. 596 F. Supp. 2d 1254, 1268 (D.Minn. 2009); Whittington v Hunter's View, Ltd., 2008 WL 703714 (S.D. W. Va. 2008).

The fact Mr. Fuller's failure to wear a safety harness may have been a proximate cause of his injuries does not negate the possibility that the detachment of the cable supporting the treestand platform was also a proximate cause, since "clearly, an accident may have more than one proximate cause." Brenton v. Consolidated Rail Corp., 2006 WL 1888598, *6 (W.D.N.Y. 2006) (Elfvin, J.). *See also* Lopez v. 1372 Shakespeare Ave. Housing Development Fund Corp., 299 A.D. 2d 230, 232 (1st Dept. 2002) ("It is well settled that there can be more than one proximate cause of an accident and there is no requirement that a plaintiff exclude every other possible cause other than defendant's breach of duty").

Thus, "evidence . . . suggesting that the plaintiff was not using the [product] as intended does not defeat the plaintiffs' claim of negligent design, it simply creates a material issue of fact as to [plaintiff's] misuse". Arnold, supra, 233 F.R.D. at 132.


**III.   Summit's Motion *in limine* to Preclude Mr. Gaudreau's Testimony at Trial [72]**

In his report [40, Ex. E] and in his deposition, plaintiffs' expert, Aldren Gaudreau, expressed opinions as to the adequacy of warnings accompanying the treestand. However, as Summit points out (Summit's Memorandum of Law [72], p. 10), Mr. Gaudreau unequivocally stated in his deposition that he does *not* hold himself out as an expert either as to human factors or

as to warnings. Gaudreau deposition [72, Ex. C], pp. 13, 87-88. Therefore, he should be precluded from testifying in that regard.[2]

Summit next argues that Mr. Gaudreau should be precluded from testifying because he is not an expert in treestands. Summit's Memorandum of Law [72], pp. 10-11. However, "the inquiry under F.R.E. 702 is whether the expert is generally qualified to render an opinion on the question at issue . . . not whether he is an expert in the general subject matter of the litigation. The fact that plaintiffs' expert may not have dealt before with the type of machinery involved is not dispositive." Colombo v. CMI Corp. 26 F. Supp. 2d 574, 576 (W.D.N.Y. 1998) (Larimer, J.).

Summit's other challenges to Mr. Gaudreau's testimony are based upon its claims that he did not test the treestand, did not offer an alternative design,[3] and are speculative. Summit's Memorandum of Law [72], pp. 11-19. While these challenges may prove to be fertile grounds for cross-examination of Mr. Gaudreau, they do not preclude him from testifying that the cable retention mechanism was defectively designed. "Disputes as to the strength of an expert's credentials, faults in his use of . . . a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony . . . . Defendant points out that Dr. Paul can offer no tests, and no prototypes or drawings of satisfactory machinery. In my view, these are

---

[2] "A motion to disqualify a prospective testifying expert is non-dispositive in nature and subject to review as clearly erroneous or contrary to law." Dreyer v. Ryder Automotive Carrier Group, Inc., 2005 WL 1074320, *1 (W.D.N.Y. 2005) (Foschio, M.J.), objections overruled, 367 F. Supp. 2d 413 (W.D.N.Y. 2005) (Arcara, J.). *But see* United States v. Smith, 2006 WL 3725553, *2 (Schroeder, M.J.) ("the resolution of such issue is better left to the determination of the trial judge").

[3] Although he in fact did. *See*, *e.g.*, September 4, 2008 Report [40-1, Ex. E], pp. 2-3; deposition [72, Ex. C], pp. 135-138.

precisely the kind of matters that should be left for the jury to consider in assessing the weight to be given to Dr. Paul's testimony." Colombo, supra, 26 F. Supp. 2d at 574, 577.

### IV.    Summit's Motion to Strike the Gaudreau Affidavit [75]

Summit moves to strike Mr. Gaudreau's affidavit [74] because it "addresses new opinions above and beyond his . . . Rule 26 report and those referenced during his deposition". Affidavit of Milton S. Karfis [75], ¶11. However, Summit does not identify these alleged "new opinions". Absent specification by the moving party, the court need not shoulder the burden of culling though the report, deposition and affidavit to decide which opinions were previously disclosed and which were not.

In any event, my decision as to the other pending motions is unaffected by the Gaudreau affidavit. Therefore, this motion [75] is denied, without prejudice to Summit's right to separately move for preclusion of Mr. Gaudreau's testimony at trial, to the extent that it was not timely disclosed.

### V.    Plaintiffs' Motion to Compel [59]

Plaintiffs move to compel the production of additional documentation from Summit concerning other treestand incidents [59]. However, Loc. R. Civ. P. ("Local Rule") 37 states that "unless ordered otherwise, no motion for discovery and/or production of documents under Federal Rules of Civil Procedure 26-37 shall be heard unless moving counsel notifies the Court by written affidavit that sincere attempts to resolve the discovery dispute have been made.

Such affidavit shall detail the times and places of the parties' meetings, correspondence or discussions concerning the discovery dispute, and the names of all parties participating therein". The Rule "is designed to embody a policy of encouraging voluntary resolution of pre-trial disputes, in the interest of judicial and client economy and efficient processing of cases." Amatangelo v. National Grid USA Service Co., Inc., 2007 WL 4560666, *5 (W.D.N.Y. 2007) (Skretny, J.).

In this case, not only did plaintiffs fail to comply with the requirements of Local Rule 37, but they did not even wait until discovery responses were due before moving to compel. They argue that "the case management order requires all motions [to compel] due on December 30, 2008 thus plaintiffs request relief now as the time to bring a motion is about to expire". Affidavit of John P. Feroleto [59], ¶7.

Although "there is some persuasive authority in other districts that a looming discovery deadline can be sufficient to waive the requirements of a meet and confer rule . . . . at this time, this Court declines to decide if this District's local meet and confer rule can be waived due to 'exigencies of time'". Amatangelo, supra, *5. In that regard, I note that the deadlines for motions to compel were imposed under a *Second* Amended Case Management Order [51], which was necessitated by plaintiffs' failure to meet the deadlines of the Amended Case Management Order [24], and it is not clear to me at this point whether the information which plaintiffs now seek to compel could have been demanded earlier.

Therefore, plaintiffs' motion to compel [59] is DENIED, without prejudice to renewal upon (1) completion of the "meet and confer" process contemplated by Local Rule 37,

and (2) a showing of good cause and excusable neglect for plaintiffs' failure to earlier seek the information requested.

## CONCLUSION

For the foregoing reasons, I

ORDER: (1) that plaintiffs' motion to compel [59] be DENIED, without prejudice to renewal upon a proper showing; (2) that Summit's motion *in limine* to preclude Aldren Gaudreau from testifying at trial [72] be GRANTED to the extent of precluding testimony concerning warnings, but otherwise DENIED; and (3) that Summit's motion to strike the Gaudreau affidavit [75] be DENIED; and I

RECOMMEND: (1) that Summit's motion for summary judgment [70] be GRANTED to the extent of dismissing plaintiff's manufacturing defect and express warranty claims, but otherwise DENIED; and (2) that Summit's motion for summary judgment [71] dismissing the complaint for lack of proximate cause be DENIED.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED**.

Dated: May 11, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge